| STATE OF TENNESSEE<br>20TH JUDICIAL DISTRICT<br>CHANCERY COURT | SUMMONS | CASE FILE NUMBER<br>10-1514-I |
|---|---|---|
| PLAINTIFF<br>Janet Patterson | DEFENDANT<br>Safeco Insurance Company of America | |

TO:   (NAME AND ADDRESS OF DEFENDANT)
Serve:  Safeco Insurance Company of America
through its Registered Agent:

Corporation Service Company
300 Deschutes Way SW, Suite 304
Tumwater, Washington  98501

List each defendant on a separate summons.

Method of Service:

X  Certified Mail
☐  Davidson Co. Sheriff
☐  *Comm. Of Insurance
☐  *Secretary of State
☐  *Out of County Sheriff
☐  Private Process Server
☐  Other
     *Attach Required Fees

**YOU ARE SUMMONED TO DEFEND A CIVIL ACTION FILED AGAINST YOU IN CHANCERY COURT, DAVIDSON COUNTY, TENNESSEE. YOUR DEFENSE MUST BE MADE WITHIN THIRTY (30) DAYS FROM THE DATE THIS SUMMONS IS SERVED UPON YOU.  YOU MUST FILE YOUR DEFENSE WITH THE CLERK OF THE COURT AND SEND A COPY TO THE PLAINTIFF'S ATTORNEY AT THE ADDRESS LISTED BELOW.  IF YOU FAIL TO DEFEND THIS ACTION BY THE ABOVE DATE, JUDGMENT BY DEFAULT CAN BE RENDERED AGAINST YOU FOR THE RELIEF SOUGHT IN THE COMPLAINT.**

| Attorney for plaintiff or plaintiff if filing Pro Se:<br>(Name, address & telephone number)<br>Timothy W. Burrow<br>Burrow & Cravens, P.C.<br>1700 Hayes Street, Suite 202<br>Nashville, Tennessee  37203<br><br>Telephone: 615-252-2502<br>Facsimile: 615-252-2508 | FILED, ISSUED & ATTESTED<br><br>SEP 1 5 2010<br><br>CRISTI SCOTT, Clerk and Master<br>By:                         1 Public Square<br>                              Suite 308<br>                              Nashville, TN 37201<br><br>                         Deputy Clerk & Master |

### NOTICE OF DISPOSITION DATE

The disposition date of this case is twelve months from date of filing.  The case must be resolved or set for trial by this date or it will be dismissed by the Court for failure to prosecute pursuant to T.R.C.P. 41.02 and Local Rule 18.

If you think the case will require more than one year to resolve or set for trial, you must send a letter to the Clerk and Master at the earliest practicable date asking for an extension of the disposition date and stating your reasons. Extensions will be granted only when exceptional circumstances exist.

| TO THE SHERIFF: I HEREBY CERTIFY THAT THIS IS A TRUE COPY OF ORIGINAL INSTRUMENT FILED IN MY OFFICE.<br><br>THIS 15 DAY OF Sept 2010<br>CRISTI SCOTT, CLERK & MASTER<br><br>BY_____ DEPUTY | DATE RECEIVED<br><br><br><br>Sheriff |

***Submit one original plus one copy for each defendant to be served.

$ADA Coordinator, Cristi Scott (862-5710)

EXHIBIT
A
PENGAD 800-631-6989

## RETURN ON SERVICE OF SUMMONS

I hereby return this summons as follows: (Name of Party Served) _____

☐ Served _____          ☐ Not Found _____
☐ Not Served _____       ☐ Other _____

DATE OF RETURN:

By: _____

Sheriff/or other authorized person to serve process

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return that on the _____ day of _____, 20___, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in case _____ to the defendant _____. On the _____ day of _____, 20___, I received the return receipt, which had been signed by _____ on the _____ day of _____, 20___. The return receipt is attached to this original summons to be filed by the Chancery Court Clerk & Master.

Sworn to and subscribed before me on this _____ day of _____, 20___.

Signature of _____ Notary Public or _____ Deputy Clerk

My Commission Expires:

Signature of plaintiff, plaintiff's attorney or other person authorized by statute to serve process.

## NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S):

Tennessee law provides a four thousand dollar ($4,000.00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

Mail list to: Clerk & Master
1 Public Square
Suite 308
Nashville TN 37201

Please state file number on list.

ATTACH
RETURN
RECEIPT
HERE
(IF APPLICABLE)

## CERTIFICATION (IF APPLICABLE)

I, Cristi Scott, Clerk & Master of the Chancery Court in the State of Tennessee, Davidson County, do certify this to be a true and correct copy of the original summons issued in this case.

CRISTI SCOTT, Clerk & Master

By: _____

D.C. & M.

# IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

FILED
2010 SEP 15 PM 4: 17
CLERK & MASTER
DAVIDSON CO. CHANCERY CT.
D.C. & M.

| | |
|---|---|
| JANET PATTERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 10-1514-I |
| | ) |
| SAFECO INSURANCE COMPANY | ) |
| OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Janet Patterson, for her Complaint, alleges the following:

1. Janet Patterson is an individual who resides in Sumner County, Tennessee.

2. Defendant Safeco Insurance Company of America ("Safeco") is believed to be a Washington corporation with its main office located at 175 Berkely Street, Boston, Massachusetts. Its agent for service of process is Corporation Service Company, who can be served at 300 Deschutes Way SW, Suite 304, Tumwater, Washington 98501.

3. Safeco issued an insurance policy to Ms. Patterson for a 12-month period that began on July 5, 2008. Ms. Patterson paid $1,390 for that insurance. The policy and its declaration page are attached hereto as **EXHIBIT A** ("Insurance Policy"), which comprise the insurance contract between Ms. Patterson and Safeco.

4. The Insurance Policy provided, among other things, coverage for fire to the property at 6109 Tulip Tree Lane in Nashville, Tennessee 37221-3914 ("the property").

5. A fire occurred at the property on April 7, 2009, which was within the 12-month policy period. The policy was in full force and effect at the time of the fire.

6. Ms. Patterson gave Safeco or its agent due notice in due time.

7. Safeco wrote a letter dated September 16, 2009 to Ms. Patterson, denying her claim for insurance proceeds as a result of the fire loss. Safeco wrongfully accused her of making material misrepresentations in her Examination Under Oath and in her Sworn Proof of Loss, using that as its basis for denial.

8. Safeco's denial of the claim and not otherwise satisfying its obligations under the policy was

a breach of the contract of insurance.

9.    Safeco's denial of the claim was not in good faith, and therefore Mr. Patterson is entitled to the remedies set forth in T.C.A. § 56-7-105. The failure to pay inflicted additional expense, loss, or injury, including attorneys fees, upon Ms. Patterson. The additional liability shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury, including attorneys fees.

10.    Ms. Patterson suffered damage as to items not covered by insurance, but that would have been prevented had Safeco not breached its insurance contract, and therefore Safeco is liable to Ms. Patterson for that damage, whether or not it is covered under the insurance policy. For example, Ms. Patterson suffered loss from her stove being stolen because Safeco did not properly secure the home and did not begin repairs. Another example includes that which could have been avoided had someone lived there or there was an ability to heat the house. That damage includes, but is not limited to, two toilets cracking, a freezing water heater pipe that burst, cracking of a water pipe under a sink, and additional damage that was caused by leaking water.

11.    Ms. Patterson incurred additional expenses as a result of Safeco's wrongful denial of coverage. That includes, but is not limited to, premiums paid for insurance for a fire-damaged house and for placement insurance.

WHEREFORE, Janet Patterson demands:

a.    That process issue and be served against Safeco, and that it be required to appear and answer this *Complaint* within the time required by law.

b.    That this Court declare that Ms. Patterson has insurance coverage.

c.    That Ms. Patterson be awarded judgment against Safeco for the following:

An amount equal to what it was required to pay under the insurance policy, which includes, but is not limited to fire damage and restoration to the property, fire damage and restoration to Ms. Patterson's personal property, and Ms. Patterson's living expenses during the time she was unable to live in the property;

Damage that occurred to the home as a result of it being left in a state of disrepair, empty, and not heated or cooled;

Rental value of the home from the date that it should have been repaired and the date

it will actually be repaired by money received by Ms. Patterson from Safeco;

Other compensatory damages; and

Consequential damages, court costs, discretionary costs, pre-judgment interest, post judgment interest, other costs, and attorneys fees.

d.   For such other and general relief to which Ms. Patterson may be entitled.

Respectfully submitted this _15th_ day of _September_ , 2010.

**BURROW & CRAVENS, P.C.**

Timothy W. Burrow, B.P.R. No. 017280
1700 Hayes Street, Suite 202
Nashville, Tennessee 37203
(615) 252-2502
Attorney for Janet Patterson

#BWNCRQQ
#OF8863321/234561#

JANET PATTERSON
6109 TULIPTREE LN
NASHVILLE TN 37221-3914

|37221391409 9|

38-1019
THE MANNING AGENCY
104 WOODMONT BLVD STE 105
NASHVILLE TN 37205-2290



EXHIBIT
A
42 PAGES
jmistano.com

OC-444EP 4/09
G1

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS. ****



THE MANNING AGENCY
104 WOODMONT BLVD STE 105
NASHVILLE    TN  37205-2290

MAY 26, 2008

Policy Number: OF1326388
24-Hour Claims: 1-800-332-3226
Policy Service: (615) 383-6700
Online Account Services: www.safeco.com

JANET PATTERSON
6109 TULIPTREE LN
NASHVILLE TN 37221-3914

|372213914099|

Thank you for allowing us to continue serving your home insurance needs. We appreciate your business and the trust that you have placed in us. We would like to remind you that it is now time to renew your Quality-Plus Homeowners policy.

This renewal reflects adjustments to your dwelling, other structures, and personal property limits. We have adjusted your dwelling coverage limit to reflect increases in labor and materials costs in your area. As part of your responsibility to maintain adequate amounts of insurance, please contact your agent to ensure that your limits reflect your dwelling's current features and characteristics, particularly if you have remodeled recently.

Your other structures and personal property limits, which are based on your dwelling coverage, have also been adjusted. You should review whether your coverage is adequate at least annually, and after each significant personal property purchase. If you would like to change your limits, or schedule any of your high value items, please contact your agent.

With this renewal the following changes were made, including those requested by you or your agent or broker:

- Your company is changed to SAFECO Insurance Company of America, a company in the SAFECO Group. As a result, your premium may have changed.
- Your Dwelling Limits (Coverage A) changed from $351,000 to $358,000. Other coverage limits listed below also changed since they are factors of your dwelling limits.
- Other Structure Limits (Coverage B) changed from $35,100 to $35,800.
- Personal Property Limits (Coverage C) changed from $263,250 to $268,500.
- Your Account Credit has changed from 10% to 15%.
- Your Renewal Credit changed to 15%.

We would also like to draw your attention to the following:

- Your new policy period begins July 5, 2008. The 12-month premium for this policy is $1,390.00 for the July 5, 2008 to July 5, 2009 policy term.

**PLEASE SEE REVERSE**
**SAFECO INSURANCE COMPANY OF AMERICA**
P O BOX 461, ST. LOUIS, MO 63166

OC-429/EP 4/08

Your renewal premium is $1,390.00. We have sent a bill for this amount to your mortgage servicing company.

If you have any questions or wish to make any changes to your policy, you can do so by calling your agent at (615) 383-6700.

**We have made changes to our program that impact both coverage and premium. The impact on individual customers will vary. Please review the declarations page, the policy and any enclosed notices carefully to see how these changes affect you.**

We appreciate the opportunity to serve you. Thank you.

Michael H. Hughes
Executive Vice President, Insurance Operations

OC-430/EP 5/98
G1

# IMPORTANT NOTICE — PLEASE READ CAREFULLY

**Company Change**

You may notice that the Safeco company listed on your Policy Declarations page has changed to SAFECO INSURANCE COMPANY OF AMERICA                    . The previous Safeco company is no longer renewing or writing homeowners policies in this state. This change in company is for administrative purposes only. Please rest assured that your service will not be affected by this change.

CHO-6024/EP 6/07

# Ask yourself: Do you have enough insurance coverage?

**How much would it take to reconstruct your home?**

Surprisingly, it has been estimated that 58% of American homes are underinsured by an average of 21%*. Make sure yours isn't one of them.

Each home is unique. You know your home best. It's your responsibility to make sure you're "fully insured" and "insured to value." That means you need to have enough insurance coverage to rebuild your home and replace all of your personal belongings in the event of total loss.

**If you answer "no" to any of these questions, call your agent and discuss your needs with them.** They will assist you in determining how much insurance would be needed to fully protect your home and belongings.

**How much would it take to reconstruct your home at today's prices?**
Things to consider:
- Your home's age (older homes tend to be more expensive to reconstruct) and style (contemporary, colonial, ranch, etc.)
- Features — fireplaces, cabinetry, built-in features, vaulted ceilings
- Flooring — hardwood, tile, natural stone, carpeting
- Finishes — crown molding, window and floor trim, faux paint, wall paper, wainscoting, chair rails, staircases, etc.
- Recent improvements you may have made (remodeled bathroom or kitchen, recessed lighting, built-in cabinets)
- A basement you may have finished or a room you may have added

**How much is enough to replace the structures surrounding your home at today's prices?**
Things to consider:
- Your fence, detached garage, gazebo, barn or storage shed
- If you have an in-ground swimming pool or just repaved your driveway or sidewalk

**What would it take to replace your personal belongings at today's prices?**
Things to consider:
- All your basics (furniture, rugs, linens, kitchenware, tools) and every electronic gadget
- Your entire wardrobe, your jewelry, medicines and personal effects
- Have you made any big purchases lately?
- If you have a garage full of tools, are passionate about the latest gadgets or collect just about anything, you should seriously consider getting more personal belongings coverage than the standard policy provides.

*© 2008 Marshall & Swift / Boeckh, LLC and its licensors. All rights reserved. Used with permission.

# Let's make sure you're "fully insured."

Your agent uses replacement cost estimation tools to establish a starting point for your insurance coverage. But you know your home best. And we look to you to give your agent the most complete, up-to-date information in order to protect your home and lifestyle. Here are two quick things you can do today:

1. **Look critically at your coverage statement page (also known as the policy declarations page, which comes after the opening letter in this package).** Do you believe you have enough Coverage A? (This is the amount you'd get for reconstruction of an as-close-as-possible replica of your home in the event of total loss.) If you're not sure, call your agent for help.

2. **Take inventory.** Compare the value of your personal belongings to the Coverage C amount on your coverage statement page. Safeco has created a form that can help you get started. You'll find it at Safeco.com/homeinventory.

**It's important to know: your home's market value is totally different from what it would cost to reconstruct.** Today's market value reflects economic conditions, taxes, school districts, the market value of land and many other factors that have nothing to do with how much it would cost to reconstruct your home from scratch.

Reconstruction cost — the amount needed to get you back home quickly — is based almost exclusively on the cost of materials and labor as well as demand for contractor services. In the event of total loss, a properly insured Safeco policyholder can rebuild with the same quality of materials and workmanship in their current home (unless a functional replacement cost policy was deliberately selected). Of course, we hope you'll never need these services. But we'll all sleep better knowing you're fully insured.

Thank you for trusting Safeco with your home insurance needs.



## Consumer Privacy Statement

Safeco appreciates the trust you place in us when you purchase insurance from one of our companies. We are committed to protecting your nonpublic personal information ("personal information") and we value you as a customer.

To learn more about how Safeco collects and uses your personal information, please read the following notice.

### Safeco's sources of information about you

We collect personal information about you from different sources, including:

- The information you provide on applications or other forms (such as your name, address and Social Security number);
- Your transactions with us, our affiliates or others (such as your payment history and claims information);
- The information we receive from a consumer reporting agency or insurance support organization (such as your credit history, driving record or claims history); and
- Your independent insurance producer (such as updated information pertaining to your account).

### Safeco's use of your personal information

We only disclose personal information about our customers and former customers as permitted by law. Generally, this includes disclosures to third parties to effect, administer or enforce your transactions with us, or in connection with servicing your insurance policy. These third parties may include independent insurance producers authorized to sell Safeco insurance products, independent contractors (such as automobile repair facilities and property inspectors), independent claims representatives, insurance support organizations, auditors, attorneys, courts and government agencies. We may also disclose your personal information to other financial institutions with whom we have joint marketing agreements. Before disclosing your personal information, we require these parties to enter into an agreement with us that includes a confidentiality provision.

We may also share information about our transactions (such as payment history and products purchased) and experiences with you (such as claims made) within our Safeco family of companies.

Safeco does not sell your personal information to others and we do not provide your information to third parties for their own marketing purposes.

### Independent Safeco Insurance Agents

The independent insurance agents authorized to sell Safeco products are not Safeco employees and not subject to Safeco's Privacy Policy. Because they have a unique business relationship with you, they may have additional personal information about you that Safeco does not have. They may use this information differently than Safeco. Contact your Safeco distributor to learn more about their privacy practices.

### Information about Safeco's web site

If you have internet access and want more information about our web site specific privacy and security practices, click on the Privacy Policy link on www.safeco.com.

OC-701/EP 1/06

Safeco and the Safeco logo are registered trademarks of Safeco Corporation

## Protecting your personal information from unauthorized access

We maintain physical, electronic and procedural safeguards to protect your personal information. Our employees are authorized to access customer information only for legitimate business purposes.

## Your medical information

If Safeco obtains medical information about you, it is done only in connection with specific claims. We will not use or share personally identifiable medical information for any purpose other than the administration of your claim, or as otherwise disclosed to you when the information is collected.

## State Privacy Laws

This privacy statement may be supplemented by privacy laws in your state. We will protect your information in accordance with state law.

## This Privacy Statement applies to the following members of the Safeco family of companies:

American Economy Insurance Company
American States Insurance Company
American States Insurance Company of Texas
American States Lloyds Insurance Company
American States Preferred Insurance Company
First National Insurance Company of America
General Insurance Company of America
Insurance Company of Illinois
Safeco Insurance Company of America
Safeco Insurance Company of Illinois
Safeco Insurance Company of Indiana
Safeco Insurance Company of Oregon
Safeco Lloyds Insurance Company
Safeco National Insurance Company
Safeco Surplus Lines Insurance Company

Copyright ® 2003 Safeco Corporation. All Rights Reserved.

OC-701/EP 1/06

## Fair Credit Reporting Act and State Law Notice

This notice is provided to you pursuant to the Fair Credit Reporting Act and provides information about the use of a consumer credit report in the pricing of the insurance policy issued to you by SAFECO INSURANCE COMPANY OF AMERICA                    , a Safeco company. Numerous factors are used to price insurance making your premium reflective of your individual situation. The rate is based on a consideration of many factors, including, for example: driving record, claims history, type of home or vehicle owned and insurance score. We are required by law to tell you that you did not receive the lowest available rate, impacted at least in part by information in a consumer report.

The primary factors in the consumer report which contributed to your insurance score are: number of accounts currently or in the past not paid as agreed, recent collection, number of collection agency filings and accounts not paid as agreed.

You can obtain a free copy of your current consumer credit report by contacting ChoicePoint within 60 days of receipt of this notice using one of the following methods: visit consumerdisclosure.com and follow the online instructions; call 800-456-6004 (automated request line); or write to ChoicePoint Consumer Service Center, P.O. Box 105108, Atlanta, GA 30348-5108. ChoicePoint did not decide how to rate your policy or make any decisions about your insurance premium and is unable to provide specific reasons regarding those decisions.

The credit bureau that supplied your information will be identified in the report sent to you. If the report is incomplete or has an error, you may contact the credit bureau to dispute the accuracy or completeness of the information. When any changes are made the credit bureau will notify you in writing. If a change was made on your report, you may ask us to obtain a new insurance score and re-rate your insurance policy. Please provide your name, policy number and a copy of the notice from the bureau to: Safeco Imaging Center, PO Box 515097, Los Angeles, CA 90051-5097 or via fax at 877-344-5107.

CN-7076/EP 1/08



# SAFECO INSURANCE COMPANY OF AMERICA
Home Office: 4333 Brooklyn Ave. N.E., Seattle, Washington 98185 (A stock insurance company.)

## QUALITY-PLUS HOMEOWNERS POLICY DECLARATIONS

**INSURED:**
JANET PATTERSON
6109 TULIPTREE LN
NASHVILLE TN 37221-3914

**POLICY NUMBER:** 0F1326388
**POLICY PERIOD FROM:** JULY 5 2008
**AT:** 12:01 A.M.
**TO:** JULY 5 2009

**RESIDENCE PREMISES:**
100 TULIPTREE CT
NASHVILLE TN 37221-3911

**AGENT:**
THE MANNING AGENCY
104 WOODMONT BLVD STE 105
NASHVILLE        TN   37205-2290

TELEPHONE:  (615) 383-6700

## IMPORTANT NOTICES

- Your policy has renewed effective July 5, 2008.

## COVERAGES

|  | LIMIT | PREMIUM |
|---|---|---|
| **SECTION I - PROPERTY COVERAGES** | | |
| A - Dwelling | $   358,000 | $   1,923.00 |
| B - Other Structures | | |
| C - Personal Property | 35,800 | |
| D - Loss of Use | 268,500 | |
| | 12 MONTHS | |
| **SECTION II - LIABILITY COVERAGES** | | |
| E - Personal Liability (each occurrence) | 100,000 | |
| F - Medical Payments (each person) | 1,000 | |
| **INCLUDED COVERAGES** | | |
| Full Value on Personal Property | | Included |
| 2085 - Additional Interest | | Included |
| Extended Dwelling Coverage-25% of Cov A Limit | 89,500 | Included |
| Building Ordinance or Law Coverage | 35,800 | Included |

## CREDITS

|  | PERCENTAGE | SAVINGS |
|---|---|---|
| Account Credit | 15% | $   -245.00 |
| Renewal Credit | 15% | -288.00 |

## DEDUCTIBLE(S)

|  | PERCENTAGE | AMOUNT |
|---|---|---|
| Section I | N/A | $    500 |

| TOTAL ANNUAL PREMIUM | $   1,390.00 |
|---|---|

You can pay your premium in full or in installments. If you pay in installments, a $4.00 service charge will apply to each installment. If you pay by automatic deduction, no service charge will apply.

## INSURABLE INTERESTS

SERVICING MORTGAGEE
   CHASE HOME FINANCE LLC
   ITS SUCCESSORS &OR ASSIGNS ATIMA
   PO BOX 47020
   DORAVILLE GA   30362
   LOAN NUMBER:  0908961913

EQUITY CREDIT LINE
   AMSOUTH BANK INS SERV CTR
   PO BOX 100006
   KENNASAW GA   30156

   LOAN NUMBER:  9002850172

CHO-6000/EP 9/06

CONTINUED
Page 1 of 2

ORIGINAL
DATE PREPARED MAY  26 2008

## SAFECO INSURANCE COMPANY OF AMERICA
## QUALITY-PLUS HOMEOWNERS POLICY DECLARATIONS

CONTINUED

**POLICY NUMBER:** 0F1326388

POLICY FORMS APPLICABLE TO THIS POLICY:

CHO-6000/EP 9/06, CHO-6033/EP 1/00, CHO-6133/TNEP 2/07, CHO-6401/EP 2/00

Case 3:10-cv-00996   Document 1-2   Filed 10/22/10   Page 16 of 46 PageID #: 25



# ADDITIONAL INTEREST ENDORSEMENT

POLICY NUMBER: 0F1326388

**AGENT:**
THE MANNING AGENCY
104 WOODMONT BLVD STE 105
NASHVILLE     TN   37205-2290

**INSURED:**
JANET PATTERSON

**AGENT TELEPHONE: (615) 383-6700**

**LOAN NUMBER:**
9002850172

AMSOUTH BANK INS SERV CTR
PO BOX 100006
KENNASAW GA   30156

← **ADDITIONAL INTEREST**

**TYPE OF INTEREST:**
EQUITY CREDIT LINE

**EFFECTIVE DATE:**
JULY  5 2008

## DEFINITIONS

The definition of *Insured* contained in this policy is amended to include the person(s) and/or organization(s) listed above, subject to the following conditions:

## SECTION I — PROPERTY COVERAGES

[X] If this box is checked, this additional interest is applicable to Coverage A — Dwelling, Coverage B — Other Structures, or Coverage C — Personal Property.

Loss payments shall be made as follows:

1st — To the Mortgagee named in the Declarations or Statement of Coverage, as its interest in the damaged property may appear;

2nd — To the persons or organizations listed as mortgagees on this or other endorsement, in their order of listing, as their interest(s) in the damaged property may appear;

3rd — To all other persons or organizations listed on this or other endorsement, in their date order of listing, as their interest(s) in the damaged property may appear;

4th — The balance, if any, to the named insured.

## SECTION II — LIABILITY COVERAGES

[ ] If this box is checked, this additional interest is applicable to Coverage E — Personal Liability, but only with respect to the *residence premises.*

This coverage does not apply to *bodily injury* to any employee arising out of or in the course of the employee's employment by the person(s) or organization(s) named on this or other endorsement.

## SECTION I and SECTION II — CONDITIONS

If this policy is canceled or not renewed by us, all additional interests will be notified in writing.

All provisions of this policy apply.

SAFECO INSURANCE COMPANY OF AMERICA

INSURED'S COPY

CHO-6401/EP 2/00
G1

DATE PREPARED: MAY  26 2008

**** REPRINTED FROM THE ARCHIVE. THE ORIGINAL TRANSACTION MAY INCLUDE ADDITIONAL FORMS ****



# QUALITY-PLUS HOMEOWNERS POLICY

## Table of Contents

|  |  | Beginning On Page |
|---|---|---|
| | INSURING AGREEMENT | 1 |
| SECTION I PROPERTY COVERAGES | COVERAGE A — DWELLING | |
| | COVERAGE B — OTHER STRUCTURES | 1 |
| |     Building Property We Cover | |
| |     Building Property We Do Not Cover | |
| |     Building Property Losses We Cover | |
| |     Building Property Losses We Do Not Cover | |
| | COVERAGE C — PERSONAL PROPERTY | |
| |     Personal Property We Cover | |
| |     Personal Property We Do Not Cover | |
| |     Personal Property Losses We Cover | |
| |     Personal Property Losses We Do Not Cover | |
| | COVERAGE D — LOSS OF USE | |
| | ADDITIONAL PROPERTY COVERAGES | |
| | PROPERTY CONDITIONS | |
| SECTION II LIABILITY COVERAGES | COVERAGES E & F — PERSONAL LIABILITY AND MEDICAL PAYMENTS | 13 |
| |     Liability Losses We Cover | |
| |     Liability Losses We Do Not Cover | |
| | ADDITIONAL LIABILITY COVERAGES | |
| | LIABILITY CONDITIONS | |
| SECTION I AND II | PROPERTY AND LIABILITY CONDITIONS | 18 |
| | POLICY DEFINITIONS | 20 |

CHO-6033/EP 1/00
G2

Safeco and the Safeco logo are registered trademarks of Safeco Corporation

Case 3:10-cv-00996   Document 1-2   Filed 10/22/10   Page 18 of 46 PageID #: 27

## INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay the premiums when due and comply with all the applicable provisions outlined in this policy.

This policy applies only to losses occurring during the policy period.

## SECTION I — PROPERTY COVERAGES

### BUILDING PROPERTY WE COVER

#### COVERAGE A — DWELLING

We cover:

1. the dwelling on the *residence premises* shown in the Declarations used principally as a private residence, including structures attached to the dwelling other than fences, driveways or walkways; and

2. materials and supplies located on or next to the *residence premises* used to construct, alter or repair the dwelling or other structures on the *residence premises.*

#### COVERAGE B — OTHER STRUCTURES

We cover:

1. fences, driveways and walkways; and

2. other structures on the *residence premises,* separated from the dwelling by clear space. This includes retaining walls, driveways, walkways, and other structures connected to the dwelling by only a fence, utility line, plumbing, or similar connection.

### BUILDING PROPERTY WE DO NOT COVER

1. Land, no matter where it is located, including land on which the dwelling is located, except as noted in **Additional Property Coverages, Land Stabilization.**

2. Other structures:

    a. used in whole or in part for *business* purposes; or

    b. rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private residence or garage.

### BUILDING PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in **Building Property We Cover** except as limited or excluded.

### BUILDING PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the following excluded perils. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss:

1. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

    a. maintain heat in the building; or

    b. shut off the water supply and drain the system and appliances of water;

2. freezing, thawing, pressure or weight of water, ice or snow whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, landscape sprinkler system, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

CHO-6033/EP 1/00 — 1 —

3. theft in, to or from a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

4. vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

5. continuous or repeated seepage or leakage of water or steam from a:

   a. heating, air conditioning, automatic fire protective sprinkler system or landscape sprinkler system;

   b. household appliance; or

   c. plumbing system, including from, within or around any shower stall, shower bath, tub installation or other plumbing fixture, including their walls, ceilings or floors;

   which occurs over a period of weeks, months or years. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the dwelling necessary to repair the system or appliance. We do not cover loss to the system or appliance from which water or steam escaped.

6. a. wear and tear, marring, scratching, deterioration;

   b. inherent defect, mechanical breakdown;

   c. smog, rust, corrosion, electrolysis, mold, fungus, wet or dry rot;

   d. smoke from agricultural smudging or industrial operations;

   e. the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission or absorption of *pollutants* at any time;

   f. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundations, walls, floors, roofs, ceilings, swimming pools, hot tubs, spas or chimneys;

   g. birds, insects or animals, domestic or not, except for breakage of glass;

   h. pressure from or presence of plant roots.

However, we do insure for any resulting loss from items 1. through 6. unless the resulting loss is itself a Loss Not Insured by this Section.

7. **Ordinance or Law,** meaning any ordinance or law:

   a. requiring or regulating the construction, remodeling, renovation, repair, or demolition of building property, including removal of resulting debris, unless specifically provided under this policy. However, loss for damage to glass caused by any **Building Property Losses We Cover** shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law;

   b. the requirements of which result in a loss in value to property; or

   c. requiring any *insured* or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants.*

   This exclusion applies whether or not the building property has been physically damaged.

8. **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to *earthquake*, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow.

   We do cover direct loss by fire, explosion or theft.

9. **Water Damage,** meaning:

   a. flood, surface water, waves, tidal water, tsunami, overflow of a body of water, or spray from any of these, whether or not driven by wind;

   b. water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, hot tub or spa, including their filtration and circulation systems, or other structure;

   c. water which backs up through sewers or drains originating outside of the *residence premises'* plumbing system; or

Case 3:10-cv-00996   Document 1-2   Filed 10/22/10   Page 20 of 46 PageID #: 29

    d.   water which backs up, overflows or discharges, for any reason, from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

Direct loss by fire, explosion or theft resulting from water damage is covered.

10. **Power Interruption,** meaning the failure of power or other utility service if the failure takes place off the *residence premises*. If any **Building Property Losses We Cover** ensues on the *residence premises,* we will pay only for the ensuing loss.

11. **Neglect,** meaning your failure to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

12. Loss caused directly or indirectly by War, including the following and any consequence of any of the following:

    a.   undeclared war, civil war, insurrection, rebellion, or revolution;

    b.   warlike act by a military force or military personnel; or

    c.   destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

13. **Nuclear Hazard,** meaning nuclear reaction, nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled, and whether or not one of the forces initiating or contributing to these nuclear hazards is covered within the losses we cover in Section I except direct loss by fire resulting from the nuclear hazard is covered.

14. **Intentional Loss,** meaning any loss arising out of any act committed:

    a.   by or at the direction of any *Insured;*

    b.   with the intent to cause a loss.

15. **Acts or Decisions,** including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss not excluded is covered.

16. Weather that contributes in any way with a cause or event excluded in this section to produce a loss. However, any ensuing loss not excluded is covered.

17. **Planning, Construction** or Maintenance, meaning faulty, inadequate or defective:

    a.   planning, zoning, development, surveying, siting;

    b.   design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    c.   materials used in repair, construction, renovation or remodeling; or

    d.   maintenance;

of property whether on or off the *insured location* by any person or organization. However, any ensuing loss not excluded is covered.

---

## PERSONAL PROPERTY WE COVER

## COVERAGE C — PERSONAL PROPERTY

1. Personal property owned or used by any *insured* is covered while it is anywhere in the world. When personal property is usually located at an *insured's* residence, other than the *residence premises,* coverage is limited to 10% of the Coverage C limit. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days immediately after you begin to move the property there.

During the time the *residence premises* is under construction by or for the *Insured,* our limit of liability for personal property other than on the *residence premises* shall be equal to the amount specified for Coverage C. Our total limit shall not exceed the policy limit for Coverage C in any one loss.

2. At your request we cover:

    a.   personal property owned by others while the property is on that part of the *residence premises* occupied exclusively by any *Insured;*

CHO-6033/EP 1/00

    **e.**   disassembled parts of a motorized land vehicle while located on the *residence premises.*

**4.**  Any device or instrument, including any accessories or antennas, for the transmitting, recording, receiving or reproduction of sound or pictures which are permanently installed in a motor vehicle.

**5.**  Aircraft, including disassembled parts of aircraft. This exclusion does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

**6.**  Property of roomers, boarders, tenants, or anyone not an *insured.*

**7.**  Property in a location regularly rented or held for rental to others by any *insured;* but this exclusion does not apply to property of an *insured* in a sleeping room rented to others by an *insured* on the *residence premises.*

**8.**  Property, away from the *residence premises,* rented or held for rental to others.

**9.**  *Business* property or merchandise:

    **a.**   in storage;

    **b.**   held as a sample; or

    **c.**   held for sale or delivery after sale.

**10.** *Business* documents, records or data regardless of the medium on which they exist.

    However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market.

---

## PERSONAL PROPERTY LOSSES WE COVER

We cover accidental direct physical loss to property described in Coverage **C** — Personal Property caused by a peril listed below except as limited or excluded.

**1.**  **Fire or lightning.**

**2.**  **Windstorm or hail.**

    This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

    This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard motors, only while inside a building with:

    **a.**   continuous walls on all sides extending from ground level to the roof;

    **b.**   doors and windows in the walls at various locations; and

    **c.**   a continuous roof sheltering all areas within the wall perimeter.

**3.**  **Explosion.**

**4.**  **Riot or civil commotion.**

**5.**  **Aircraft,** including self-propelled missiles and spacecraft.

**6.**  **Vehicles,** meaning impact by a vehicle.

**7.**  **Smoke,** meaning sudden and accidental damage from smoke.

    This peril does not include loss caused by smoke from agricultural smudging or industrial operations, such as slash burns.

**8.**  **Vandalism or malicious mischief.**

**9.**  **Theft,** including attempted theft and loss of property from a known location when it is likely that the property has been stolen.

    This peril does not include loss caused by theft:

    **a.**   committed by any *insured* or by any other person regularly residing on the *insured location;*

    **b.**   in, to or from a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

Case 3:10-cv-00996   Document 1-2   Filed 10/22/10   Page 22 of 46 PageID #: 31

c.   from that part of a *residence premises* rented by any *insured* to other than an *insured*.

This peril does not include loss caused by theft that occurs away from the *residence premises* of property while at any other residence owned, rented to, or occupied by any *insured,* except while an *insured* is temporarily residing there.

Property of a student who is an *insured* is covered while at a residence away from home.

10.  **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11.  **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12.  **Collapse of a building or any part of a building.**

This peril does not include settling, cracking, shrinking, bulging or expansion.

13.  **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a.   to the appliance or system from which the water or steam escaped;

b.   caused by or resulting from freezing except as provided in the peril of freezing below; or

c.   on the *residence premises* caused by accidental discharge or overflow which occurs off the *residence premises.*

14.  **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

15.  **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the *residence premises* while the dwelling is unoccupied, unless you have used reasonable care to:

a.   maintain heat in the building; or

b.   shut off the water supply and drain the system and appliances of water.

16.  **Sudden and accidental damage from artificially generated electrical current.**

17.  **Breakage of glass,** meaning damage to personal property caused by breakage of glass which is a part of a building on the *residence premises*. There is no coverage if breakage of glass is caused by *earthquake*. There is no coverage for loss or damage to the glass.

---

## PERSONAL PROPERTY LOSSES WE DO NOT COVER

We do not cover loss caused directly or indirectly by any of the **Building Property Losses We Do Not Cover.** Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

---

## COVERAGE D — LOSS OF USE

1.   If a loss covered under this Section makes that part of the *residence premises* where you reside uninhabitable we cover **Additional Living Expense,** meaning any necessary increase in living expenses you incur so that your household can maintain its normal standard of living.

Payment shall be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere, but not to exceed 12 months.

2.   If a loss covered under this Section makes that part of the *residence premises* you rent to others or hold for rental uninhabitable, we cover:

**Fair Rental Value,** meaning the **fair rental value** of that part of the **residence premises** you rent to others or hold for rental, less any expenses that do not continue while the premises is uninhabitable.

Payment shall be for the shortest time required to repair or replace the damage, but not to exceed 12 months.

3. If a civil authority prohibits you from use of the **residence premises** as a result of direct damage to neighboring premises by a loss we cover in this policy we cover the **Additional Living Expense** as provided under 1. or **Fair Rental Value** as provided under 2. above for no more than two weeks during which use is prohibited.

The periods of time under **1., 2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

No deductible applies to this coverage.

---

## ADDITIONAL PROPERTY COVERAGES

The following **Additional Property Coverages** are subject to all the terms, provisions, exclusions, and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expense you incur in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.

   We will also pay the reasonable expenses you incur, up to $500, for the removal of trees from the **residence premises,** provided the trees damage **Building Property We Cover.** The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Trees, Shrubs and Other Plants.** We cover, as an additional amount of insurance, trees, shrubs, plants or lawns, on the **residence premises,** for loss caused by the following perils: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises,** Vandalism or Malicious mischief and Theft.

   We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns. No more than $500 of this limit will be available for any one tree, shrub or plant.

3. **Reasonable Repairs.** We will pay up to $5,000 for the reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, following a covered loss. This coverage does not increase the limit of liability applying to the property being repaired.

4. **Fire Department Service Charge.** We will pay, up to $500, as an additional amount of insurance, for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a loss we cover.

   We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a loss we cover. We will cover this property for a maximum of 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Land Stabilization.** We will pay up to $5,000 for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling or other structures sustaining a covered loss. This is an additional amount of insurance.

7. **Building Ordinance or Law Coverage.** You may use up to the limit of liability stated on the Declarations for this coverage for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

   a. the construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a loss we cover;

   b. the demolition and reconstruction of the undamaged part of a covered building or other structure, when the building or other structure must be totally demolished because of damage by a loss we cover to the damaged part of that covered building or structure; or

CHO-6033/EP 1/00      — 7 —

c. the remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a loss we cover.

You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated above.

We do not cover:

a. the loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

b. the costs to comply with any ordinance which requires any *insured* or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, *pollutants.*

This is an additional amount of insurance.

8. **Arson Reward.** We will pay up to $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, we will not pay more than $5,000 per event regardless of the number of persons providing information.

9. **Household Products Coverage.** We cover direct physical loss to the property described in Coverage A and B arising out of a discharge, dispersal, spill, leak, release, escape, emission, transmission or absorption of household products on the *residence premises.* Household products include items currently in use or your possession at the *residence premises* in normal household quantities such as paint, paint thinners, soaps, bleach, pesticides, herbicides, motor oil, gasoline, heating fuel and similar items. For purposes of this coverage, household products do not include materials containing asbestos, lead or formaldehyde.

We will pay up to 5% of the Coverage A limit of liability stated in the Declarations for any loss during the policy period under this coverage after you have paid your deductible. This is an additional amount of insurance.

This coverage does not apply to:

a. any fee, assessment or expense of any governmental authority;

b. loss arising out of household products possessed or used:

    (1) for *business* purposes;

    (2) for illegal purposes;

    (3) by contractors; or

    (4) on driveways or walkways.

Item 6.e. under **Section I — Building Property Losses We Do Not Cover** does not apply to this **Additional Property Coverage.**

In the event that a loss is covered under both this coverage and **Additional Property Coverages — Building Ordinance or Law Coverage,** you may elect either one of these coverages, but not both.

10. **Locks.** We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the *residence premises,* when the keys to those locks are part of a covered theft loss.

No deductible applies to this coverage.

Case 3:10-cv-00996    Document 1-2    Filed 10/22/10    Page 25 of 46 PageID #: 34

# SECTION I — PROPERTY CONDITIONS

1.  **Deductible.** In case of loss under Section I — Property Coverages of this policy, we cover only that part of the loss over the applicable deductible stated in the Declarations.

    The deductible does not apply to Coverage D — Loss Of Use or Fire Department Service Charge.

2.  **Your Duties to Select and Maintain Policy Limits.** It is your responsibility to select and maintain adequate amounts of insurance on your dwelling and personal property. To simplify your responsibility of keeping your dwelling and personal property insured to value during fluctuating economic conditions, we will suggest annual changes, either up or down, of your policy limits. This suggestion will be made on the renewal date of your policy, applied pro rata during the policy period, and will be based upon average factors for your area supplied to us by recognized appraisal agencies. Your home may not be average.

    You will be notified in advance of the new amount of coverage. Payment of your renewal is all that is necessary to indicate your acceptance of the new amount.

3.  **An Insured's Duties After Loss.** In case of a loss to which this insurance may apply, you must perform the following duties:

    a.  cooperate with us in the investigation, settlement or defense of any claim or suit;

    b.  give immediate notice to us or our agent;

    c.  notify the police in case of loss by theft;

    d.  protect the property from further damage, make reasonable and necessary repairs required to protect the property and keep an accurate record of repair expenses;

    e.  prepare an inventory of the loss to the building and damaged personal property showing in detail the quantity, description, *replacement cost* and age. Attach all bills, receipts and related documents that justify the figures in the inventory;

    f.  as often as we reasonably require:

        (1) exhibit the damaged and undamaged property;

        (2) provide us with records and documents we request and permit us to make copies; and

        (3) submit to examinations under oath and subscribe the same. We may examine you separately and apart from your spouse or any other *insured*. You shall not interfere with us examining any other *insured*.

    g.  submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

        (1) the time and cause of loss;

        (2) interest of the *insured* and all others in the property involved and all encumbrances on the property;

        (3) other insurance which may cover the loss;

        (4) changes in title or occupancy of the property during the term of the policy;

        (5) specifications of any damaged building and detailed repair estimates;

        (6) an inventory of damaged personal property described in **3.e.**;

        (7) receipts for **Additional Living Expenses** incurred or records supporting the **Fair Rental Value** loss.

4.  **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    a.  to the *Insured* for more than the amount of the *Insured's* interest at the time of loss; or

    b.  for more than the applicable limit of liability;

    whichever is less.

5. **Loss Settlement.** Covered property losses are settled as follows:

a. **Replacement Cost.** Property under Coverage A or B at *replacement cost,* not including wood fences, subject to the following:

(1) We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

(a) the limit of liability under the policy applying to Coverage A or B;

(b) the *replacement cost* of that part of the damaged building for equivalent construction and use on the same premises as determined shortly following the loss;

(c) the full amount actually and necessarily spent to repair or replace the damaged building as determined shortly following the loss;

(d) the direct financial loss you incur; or

(e) our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

(2) **Guaranteed Replacement.** We will settle covered losses to the dwelling under Coverage A without regard to the limit of liability shown in the Declarations, provided you:

(a) insure the dwelling to 100% of its *replacement cost* as agreed by us;

(b) accept any yearly adjustments by us of Coverage A reflecting changes in the cost of construction for the area;

(c) notify us of any addition or other remodeling which increases the *replacement cost* of the dwelling $5,000 or more;

i. within 90 days of the start of construction; or

ii. before the end of the current policy period;

whichever is longer, and pay any resulting additional premium; and

(d) repair or replace the damaged dwelling.

If you fail to comply with any of the above provisions, the limit of liability shown in the Declarations for Coverage A shall apply.

From time to time we may make requests of you for updated dwelling information. If you fail to provide the information, we may delete Guaranteed Replacement effective at policy renewal.

This **Loss Settlement, 5.a.(2),** Guaranteed Replacement, is an optional coverage and applicable only if purchased and shown in the Declarations.

(3) When more than one layer of siding or roofing exists for **Building Property We Cover,** we will pay for the replacement of one layer only. The layer to be replaced will be at your option. The payment will be subject to all other policy conditions relating to loss payment.

When more than one layer of finished flooring exists we will pay for the finish of only one layer.

(4) If the cost to repair or replace is $5,000 or more, we will pay the difference between *actual cash value* and *replacement cost* only after the damaged or destroyed property has actually been repaired or replaced.

(5) You may disregard the *replacement cost* loss settlement provisions and make claim under this policy for loss or damage to buildings on an *actual cash value* basis but not exceeding the smallest of the following amounts:

(a) the applicable limit of liability;

(b) the direct financial loss you incur; or

(c) our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

You may still make claim on a *replacement cost* basis by complying with **a.(4)** above.

b. **Full Value.** Personal property under Coverage C or Option E — Scheduled Personal Property, not otherwise described under **Loss Settlement, 5.c., Actual Cash Value,** below, and awnings, carpeting,

Case 3:10-cv-00996   Document 1-2   Filed 10/22/10   Page 27 of 46 PageID #: 36

domestic appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings, at *replacement cost* at the time of loss subject to the following:

(1) We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:

    (a) the limit of liability of this policy applicable to the damaged, destroyed or stolen property;

    (b) the *replacement cost* of the property or any part;

    (c) the full amount actually and necessarily spent by the *Insured* in repairing or replacing the property or any part;

    (d) the direct financial loss you incur; or

    (e) our pro rata share of any loss when divided with any other valid and collectible insurance applying to the covered property at the time of loss.

(2) We will pay the difference between *actual cash value* and *replacement cost* only after the damaged, destroyed or stolen property has actually been repaired or replaced.

(3) You may make a claim for loss on an *actual cash value* basis and then make a claim, within 180 days after loss, for any additional liability under *replacement cost,* after you have repaired or replaced the property.

This **Loss Settlement, 5.b.,** Full Value, is an optional coverage and applicable only if purchased and shown in the Declarations.

c. **Actual Cash Value.**

(1) Wood fences and structures that are not buildings; and

(2) The following property:

    (a) antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced;

    (b) memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value;

    (c) personal property not maintained in good or workable condition;

    (d) personal property that is outdated or obsolete and is stored or not being used;

    (e) property not owned by any *insured;* and

    (f) motorized land vehicles or earth moving or excavating equipment used to service the *residence premises;* and

if Full Value is not purchased and shown in the Declarations, then;

    (g) all other personal property; and

    (h) awnings, carpeting, domestic appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

at *actual cash value* at the time of loss not exceeding the amount necessary to repair or replace.

6. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between *replacement cost* of the pair or set before and after the loss.

7. **Appraisal.** If you and we do not agree on the amount of the loss, including the amount of *actual cash value* or *replacement cost,* then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then, on request of you or the company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then resolve the issues surrounding the loss, appraise the loss, stating separately the *actual cash value* or *replacement cost* of each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss.

CHO-6033/EP 1/00          — 11 —

Each party will:

a.   pay its own appraiser; and

b.   bear the other expenses of the appraisal and umpire equally.

8.  **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage.

9.  **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the property damaged with equivalent property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy to receive payment. Loss will be payable 30 days after:

a.   we reach agreement with you;

b.   there is an entry of a final judgment; or

c.   there is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by any *insured*.

12. **Mortgage Clause.**

The word "mortgagee" includes trustee. If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

a.   notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b.   pays any premium due under this policy on demand if you have neglected to pay the premium;

c.   submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so.

d.   complies with item 3.e. of **Section I — Property Conditions.**

Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee. If the policy is canceled or not renewed by us, the mortgagee shall be notified at least 20 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

e.   we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

f.   at our option, we shall receive full or partial assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt as our payment, including any accrued interest, as it bears to the amount of the principal on the mortgage.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

14. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Salvage Value.** Any value that may be realized from *salvage* will not diminish the amount owed by you under the deductible clause. We need not accept, but have all rights to *salvage*.

Case 3:10-cv-00996   Document 1-2   Filed 10/22/10   Page 29 of 46 PageID #: 38

## SECTION II — LIABILITY COVERAGES

### LIABILITY LOSSES WE COVER

### COVERAGE E — PERSONAL LIABILITY

If a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the *insured* is legally liable; and

2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the *occurrence* equals our limit of liability.

### COVERAGE F — MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. Medical expenses means reasonable charges for medical, surgical, X-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household other than *residence employees*. As to others, this coverage applies only:

1. to a person on the *insured location* with the permission of any *insured;* or

2. to a person off the *insured location,* if the *bodily injury:*

   a. arises out of a condition on the *insured location* or the ways immediately adjoining;

   b. is caused by the activities of any *insured;*

   c. is caused by a *residence* employee in the course of the *residence employee's* employment by any *insured;* or

   d. is caused by an animal owned by or in the care of any *insured.*

### LIABILITY LOSSES WE DO NOT COVER

1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to *bodily injury* or *property damage:*

   a. which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured;*

   b. arising out of *business* pursuits of any *insured* or the rental or holding for rental of any part of any premises by any *insured.*

      This exclusion does not apply to:

      (1) Activities which are ordinarily incident to non-*business* pursuits except as excluded in h. below;

      (2) Coverage E for the occasional or part-time *business* pursuits of any *insured* who is under 23 years of age;

      (3) the rental or holding for rental of a residence of yours:

         (a) on an occasional basis for the exclusive use as a residence;

         (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

         (c) in part, as an office, school, studio or private garage;

   c. arising out of the rendering or failing to render professional services;

   d. arising out of any premises owned or rented to any *insured* which is not an *insured location;*

   e. arising out of the ownership, maintenance, use, loading or unloading of:

      (1) aircraft.

         This item e.(1) does not apply to model aircraft. Any aircraft designed for carrying persons or cargo is not a model aircraft.

Case 3:10-cv-00996   Document 1-2   Filed 10/22/10   Page 30 of 46 PageID #: 39

(2) motorized land vehicles, including any trailers, owned or operated by or rented or loaned to any *Insured.*

You have coverage for the following:

(a) a trailer not towed by or carried on a motorized land vehicle;

(b) a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and:

    i. not owned by any *insured;* or

    ii. owned by any *Insured,* while on an *Insured location;*

(c) a motorized golf cart;

(d) a motorized land vehicle used solely for assisting the handicapped or solely for the maintenance of an *Insured location,* which is:

    i. not designed for travel on public roads; and

    ii. not subject to motor vehicle registration, licensing or permits; or

(e) a motorized land vehicle in dead storage on an *Insured location.*

(3) watercraft:

(a) owned by or rented to any *Insured* if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any *Insured* if it is a sailing vessel 26 feet or more in overall length, with or without auxiliary power;

(c) powered by one or more outboard motors with 50 or more total horsepower if the outboard motors are owned by any *Insured.*

However, outboard motors of 50 or more total horsepower are covered for the policy period if:

    i. you acquired them prior to the policy inception, and:

        (i) declared them at policy inception; or

        (ii) you ask us in writing to insure them within 45 days after you become the owner;

    ii. you acquire them during the policy period, provided you ask us to insure them:

        (i) during the policy period in which you become the owner; or

        (ii) within 45 days after you become the owner;

        whichever is greater, and pay any resulting additional premium from the date acquired.

(d) designed as an air boat, air cushion, or similar type of craft; or

(e) owned by any *insured* which is a *personal watercraft.*

Exclusion e.(3) does not apply while the watercraft is stored.

Exclusions d. and e. do not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by any *insured;*

f. arising out of:

(1) the entrustment by any *Insured* to any person;

(2) the supervision by any *Insured* of any person;

(3) any act, decision or omission by any *Insured;*

(4) any liability statutorily imposed on any *Insured;* or

(5) any liability assumed through an unwritten or written agreement by any *Insured;*

with regard to any aircraft, motorized land vehicle or watercraft which is not covered under Section II of this policy.

g. caused directly or indirectly by war, including the following and any consequences of the following:

(1) undeclared war, civil war, insurrection, rebellion, or revolution;

(2) warlike act by a military force or military personnel; or

(3) destruction or seizure or use for a military purpose.

Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

h. which results from the legal liability of any *insured* because of home care services provided to any person on a regular basis by or at the direction of:

(1) any *insured;*

(2) any employee of any *insured;*

(3) any other person actually or apparently acting on behalf of any *insured.*

Regular basis means more than 20 hours per week. This exclusion does not apply to:

(1) home care services provided to the relatives of any *insured;*

(2) occasional or part-time home care services provided by any *insured* under 23 years of age.

i. arising out of physical or mental abuse, sexual molestation or sexual harassment.

j. arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana, PCP and all narcotic drugs.

However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

k. arising out of any *insured's* participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft regardless of whether such contest is spontaneous, prearranged or organized. This exclusion does not apply to a sailing vessel less than 25 feet in overall length with or without auxiliary power.

2. Coverage E — Personal Liability does not apply to:

a. Liability:

(1) for any loss assessment charged against you as a member of an association of property owners;

(2) under any contract or agreement. However, this item 2.a.(2) does not apply to written contracts:

(a) that directly relate to the ownership, maintenance or use of an *insured location;* or

(b) where the liability of others is assumed by the *insured* prior to an *occurrence;*

unless excluded in 2.a.(1) above or elsewhere in this policy;

(3) for *punitive damages* awarded against any *insured;*

(4) arising out of any illegal act committed by or at the direction of any *insured.*

b. *property damage* to property owned by any *insured;*

c. *property damage* to property rented to, occupied or used by or in the care of any *insured.* This exclusion does not apply to *property damage* caused by fire, smoke, explosion or water;

d. *bodily injury* to any person eligible to receive any benefits required to be provided or voluntarily provided by any *Insured* under:

(1) any workers' compensation;

(2) non-occupational disability; or

(3) occupational disease law;

e. *bodily injury* or *property damage* for which any *Insured* under this policy is also an *Insured* under a nuclear energy liability policy or would be an *Insured* but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors;

Case 3:10-cv-00996   Document 1-2   Filed 10/22/10   Page 32 of 46   PageID #: 41

    f.   *bodily injury* to any *Insured;*

    g.   *bodily injury* or *property damage* arising, in whole or part, out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, emission, transmission, absorption, ingestion or inhalation of *pollutants* at any time. This includes any loss, cost or expense arising out of any:

        (1)   request, demand or order that any *insured* or others test for, monitor, abate, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess, the effects of *pollutants;*

        (2)   claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing, the effects of *pollutants;*

3.   **Coverage F — Medical Payments to Others** does not apply to *bodily injury:*

    a.   to a *residence employee* if the *bodily injury* occurs off the *Insured location* and does not arise out of or in the course of the *residence employee's* employment by an *Insured;*

    b.   to any person, eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation; non-occupational disability, or occupational disease law;

    c.   from any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

    d.   to any person, other than a *residence employee* of any *Insured,* regularly residing on any part of the *Insured location.*

**LIABILITY LOSSES WE DO NOT COVER** does not apply to personal injury as defined under *Bodily Injury* **2.b.(1) and 2.b.(2).**

---

## ADDITIONAL LIABILITY COVERAGES

We cover the following in addition to the limits of liability:

1.   **Claim Expenses.** We pay:

    a.   expenses we incur and costs taxed against any *insured* in any suit we defend;

    b.   premiums on bonds required in a suit we defend, but not for bond amounts greater than the limit of liability for **Coverage E — Personal Liability.** We are not obligated to apply for or furnish any bond;

    c.   reasonable expenses incurred by any *insured* at our request, including actual loss of earnings (but not loss of other income) up to $200 per day, for assisting us in the investigation or defense of any claim or suit; and

    d.   interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2.   **First Aid Expenses.** We will pay expenses for first aid to others incurred by any *insured* for *bodily injury* covered under this policy. We will not pay for first aid to you or any other *Insured.*

3.   **Damage to Property of Others.** We will pay on a *replacement cost* basis up to $500 per *occurrence* for *property damage* to property of others caused by any *insured.*

    We will not pay for *property damage:*

    a.   if insurance is otherwise provided in this policy;

    b.   caused intentionally by any *Insured* who is 13 years of age or older;

    c.   to property owned by or rented to any *Insured,* a tenant of any *Insured,* or a resident in your household; or

    d.   arising out of:

        (1)   *business* pursuits;

        (2)   any act or omission in connection with a premises owned, rented or controlled by an *Insured,* other than the *Insured location;* or

        (3)   the ownership, maintenance, or use of aircraft, watercraft or motorized land vehicles.

This item **3.d.(3)** does not apply to a motorized land vehicle designed for recreational use off public roads, not subject to motor vehicle registration, licensing or permits and not owned by any *insured*.

4. **Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

   We will pay up to $1,000 for:

   a. the legal obligation of an *insured* to pay because of theft or unauthorized use of credit cards issued to or registered in any *insured's* name;

   b. loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in any *insured's* name.

   We do not cover use by a resident of your household, a person who has been entrusted with the credit card or fund transfer card or any person if any *insured* has not complied with all terms and conditions under which the credit card or fund transfer card is issued.

   c. loss to any *insured* caused by forgery or alteration of any check or negotiable instrument; and

   d. loss to any *insured* through acceptance in good faith of counterfeit United States or Canadian paper currency.

   All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

   We do not cover loss arising out of *business* pursuits or dishonesty of any *insured*.

   Defense:

   a. We may make any investigation and settle any claim or suit that we decide is appropriate.

   b. If a suit is brought against any *insured* for liability under the Credit Card or Fund Transfer Card Coverage, we will provide a defense at our expense by counsel of our choice.

   c. We have the option to defend at our expense any *insured* or any *insured's* bank against any suit for the enforcement of payment under the forgery coverage.

5. **Statutorily Imposed Vicarious Parental Liability.**

   We will pay the lesser of:

   a. the statutorily imposed limit; or

   b. $3,000;

   for the legal obligation you are required to pay as a result of acts of a minor child who resides with you.

   This coverage is excess over any other valid and collectible insurance.

---

## SECTION II — LIABILITY CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one *occurrence* will not exceed the limit of liability for Coverage E stated in the Declarations. This limit is the same regardless of the number of *Insureds,* claims made or persons injured.

   Our total liability under Coverage F for all medical expense payable for *bodily injury* to one person as the result of one accident shall not exceed the limit of liability for Coverage F stated in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each *insured*. This condition shall not increase our limit of liability for any one *occurrence*.

3. **Your Duties After Loss.** In case of an accident or *occurrence*, the *insured* shall perform the following duties that apply:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of the policy and *insured*;

Case 3:10-cv-00996   Document 1-2   Filed 10/22/10   Page 34 of 46 PageID #: 43

    (2) reasonably available information on the time, place and circumstances of the accident or *occurrence;*

    (3) names and addresses of any claimants and witnesses; and

    (4) in case of loss under the Credit Card or Fund Transfer Card Coverage also notify the Credit Card or Fund Transfer Card Company;

**b.** promptly forward to us every notice, demand, summons or other process relating to the accident or *occurrence;*

**c.** at our request, help us:

    (1) to make a settlement;

    (2) to enforce any right of contribution or indemnity against any person or organization who may be liable to any *Insured;*

    (3) with the conduct of suits and attend hearings and trials;

    (4) to secure and give evidence and obtain the attendance of witnesses;

**d.** under the **Additional Liability Coverages** — Damage to the Property of Others — submit to us within 60 days after the loss, a sworn statement of loss and exhibit the damaged property, if within the *Insured's* control;

**e.** submit within 60 days after the loss, evidence or affidavit supporting a claim under the **Additional Liability Coverages,** Credit Card, Fund Transfer Card, or Forgery and Counterfeit Money Coverage, stating the amount and cause of loss;

**f.** the *Insured* shall not, except at the *insured's* own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the *bodily injury.*

4. **Duties of an Injured Person — Coverage F — Medical Payments to Others.** The injured person or someone acting for the injured person will:

    **a.** give us written proof of claim, under oath if required, as soon as practical;

    **b.** authorize us to obtain copies of medical reports and records.

The injured person shall submit to physical examination by a doctor selected by us when and as often as we reasonably require.

5. **Payment of Claim — Coverage F — Medical** Payments to Others. Payment under this coverage is not an admission of liability by any *Insured* or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have any right to join us as a party to any action against any *insured.* Further, no action with respect to Coverage E shall be brought against us until the obligation of the *insured* has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of any *insured* shall not relieve us of any of our obligations under this policy.

8. **Other Insurance — Coverage E — Personal Liability.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

---

## SECTIONS I AND II — PROPERTY AND LIABILITY CONDITIONS

1. **Policy Period and Changes.**

    **a.** The effective time of this policy is 12:01 A.M. at the *residence premises.* This policy applies only to loss under Section I, or *bodily injury* or *property damage* under Section II, which occurs during the policy period. This policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

    **b.** Changes:

        **(1)** Before the end of any policy period, we may offer to change the coverage provided in this policy. Payment of the premium billed by us for the next policy period will be your acceptance of our offer.

        **(2)** This policy contains all agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change. Additional or return premium of $3.00 or less will be waived.

**2.** **Concealment or Fraud.** This policy will be void if any *insured* has, before or after a loss:

    **a.** intentionally concealed or misrepresented any material fact or circumstance; or

    **b.** made false statements or engaged in fraudulent conduct relating to this insurance;

with the intent to deceive.

**3.** **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state.

This liberalization clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

**4.** **Cancellation.**

    **a.** You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

    **b.** We may cancel this policy only for the reasons stated below by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

        **(1)** When you have not paid the premium we may cancel at any time by notifying you at least 20 days before the date cancellation takes effect.

        **(2)** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 31 days before the date cancellation takes effect.

        **(3)** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 31 days before the date cancellation takes effect.

    **c.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us for cancellation, we will refund it within a reasonable time after the date cancellation takes effect.

**5.** **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 31 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

**6.** **Assignment.** Assignment of this policy shall not be valid unless and until we give our written consent.

**7.** **Our Right to Recover Payment.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, the *insured* shall sign and deliver all related papers and cooperate with us in any reasonable manner.

Subrogation does not apply under Section **II** to **Coverage F — Medical Payments to Others** or **Additional Liability Coverages,** Damage to Property of Others.

8. Death. If any person named in the Declarations or the spouse, if a resident of the same household, dies:

    a. we insure the legal representative of the deceased, but only with respect to the premises and property of the deceased covered under the policy at the time of death.

    b. *Insured* includes:

        (1) any member of the household who is an *insured* at the time of your death, but only while a resident of the *residence premises;* and

        (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

---

## POLICY DEFINITIONS

---

Throughout this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household, and "we," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. *"Actual cash value"*

    a. When the damage to property is economically repairable, *actual cash value* means the cost of repairing the damage, less reasonable deduction for wear and tear, deterioration and obsolescence.

    b. When the loss or damage to property creates a total loss, *actual cash value* means the market value of property in a used condition equal to that of the destroyed property, if reasonably available on the used market.

    c. Otherwise, *actual cash value* shall mean the market value of new, identical or nearly identical property, less reasonable deduction for wear and tear, deterioration and obsolescence.

2. *"Bodily Injury"* means:

    a. bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

    *Bodily injury* does not include any communicable disease transmitted by any *insured* to any other person;

    b. personal injury:

        (1) arising out of one or more of the following offenses:

           (a) false arrest, detention or imprisonment, or malicious prosecution;

           (b) libel, slander or defamation of character; or

           (c) invasion of privacy, wrongful eviction or wrongful entry.

        (2) coverage does not include:

           (a) liability assumed by any *insured* under any contract or agreement except any indemnity obligation assumed by the *insured* under a written contract directly relating to the ownership, maintenance or use of the *insured location;*

           (b) injury arising out of any illegal act committed by or at the direction of any *Insured;*

           (c) injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by any *Insured;*

           (d) injury arising out of the *business* pursuits of any *Insured*. This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by any *Insured;*

           (e) injury arising out of civic or public activities performed for pay by any *insured;* or

           (f) *punitive damages* awarded against any *Insured.*

3. *"Business"* includes trade, profession or occupation.

4. *"Earthquake"* means shaking or trembling of the earth, whether caused by volcanic activity, tectonic processes or any other cause.

Case 3:10-cv-00996    Document 1-2    Filed 10/22/10    Page 37 of 46 PageID #: 46

5. *"Insured"* means you and the following residents of your household:

   a.   your relatives;

   b.   any other person under the age of 21 who is in the care of any person named above.

Under **Section II — Liability Coverage,** *"insured"* also means:

   c.   with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** A person or organization using or having custody of these animals or watercraft in the course of any *business,* or without permission of the owner is not an *Insured;*

   d.   with respect to any vehicle to which this policy applies:

      (1)   any person while engaged in your employment or the employment of any person included in **a.** or **b.**; or

      (2)   any other person using the vehicle on an *insured location* with any *Insured's* permission.

6. *"Insured location"* means:

   a.   the *residence premises;*

   b.   that part of any other premises, other structures and grounds, used by you as a residence and which is shown in the Declarations. This includes any premises, structures and grounds which are acquired by you during the policy period for your use as a residence;

   c.   any premises used by you in connection with the premises included in **a.** or **b.**;

   d.   any part of a premises not owned by any *Insured* but where any *Insured* is temporarily residing;

   e.   vacant land owned by or rented to any *Insured* other than farmland;

   f.   land owned by or rented to any *Insured* on which a one, two, three or four family dwelling is being constructed as a residence for any *Insured;*

   g.   individual or family cemetery plots or burial vaults of any *insured;* or

   h.   any part of a premises occasionally rented to any *insured* for other than *business* purposes.

7. *"Occurrence"* means an accident, including exposure to conditions which results in:

   a.   *bodily injury;* or

   b.   *property damage;*

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one *occurrence.*

8. *"Personal Watercraft"* means jet skis, wet bikes or other craft, using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

9. *"Pollutants"* means:

   a.   liquid fuels;

   b.   lead or any materials containing lead;

   c.   asbestos or any materials containing asbestos;

   d.   radon;

   e.   formaldehyde or any materials containing formaldehyde;

   f.   electric fields, magnetic fields, electromagnetic fields, power frequency fields, electromagnetic radiation or any other electric or magnetic energy of any frequency;

   g.   carbon monoxide; or

   h.   any other irritant or contaminant, including waste, vapor, fumes, acids, alkalis, chemicals or radioactive substances.

10. *"Property damage"* means physical damage to or destruction of tangible property, including loss of use of this property.

   *Property damage* does not include loss caused by any communicable disease transmitted by any *Insured.*

CHO-6033/EP 1/00           — 21 —

11. *"Punitive damages"* means damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose other than as compensatory damages for *bodily injury* or *property damage.*

12. *"Replacement cost"*

   a. In case of loss or damage to buildings, *replacement cost* means the cost, at the time of loss, to repair or replace the damaged property with new materials of like kind and quality, without deduction for depreciation.

   b. In case of loss to personal property, *replacement cost* means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is not available, *replacement cost* shall mean the cost of a new article similar to the one damaged or destroyed and which is of comparable quality and usefulness, without deduction for depreciation.

13. *"Residence employee"* means an employee of any *insured* who performs duties in connection with the maintenance or use of the *residence premises*, including household or domestic services, or who performs duties elsewhere of a similar nature not in connection with the *business* of any *insured.*

14. *"Residence premises"* means:

   a. the one, two, three or four family dwelling, used principally as a private residence;

   b. other structures and grounds; or

   c. that part of any other building;

   where you reside and which is shown in the Declarations.

15. *"Salvage"* means property having value and included in a covered loss.

# SPECIAL PROVISIONS — EXTENDED DWELLING COVERAGE

## SECTION I — PROPERTY CONDITIONS

Item 5.a.(2) Guaranteed Replacement is deleted and replaced by the following:

(2) **Extended Dwelling Coverage.** We will settle covered losses to the dwelling up to an additional 25% of the limit of liability shown in the Declarations for Coverage A provided you:

  (a) insure the dwelling to its *replacement cost* as agreed by us;

  (b) accept any yearly adjustments by us of Coverage A reflecting changes in the cost of construction for the area;

  (c) notify us of any addition or other remodeling which increases the *replacement cost* of the dwelling $5,000 or more:

    I. within 90 days of the start of construction; or

    II. before the end of the current policy period;

    whichever is longer, and pay any resulting additional premium; and

  (d) repair or replace the damaged dwelling.

If you fail to comply with any of the above provisions, the limit of liability shown in the Declarations for Coverage A shall apply.

From time to time we may make requests of you for updated dwelling information. If you fail to provide the information, or if we disagree on *replacement cost*, we may delete **Extended Dwelling Coverage** effective at policy renewal.

This **Loss Settlement, 5.a.(2), Extended Dwelling Coverage,** is an optional coverage and applicable only if purchased and shown on the Declarations.

# SPECIAL PROVISIONS — FUNGI, WET OR DRY ROT, OR BACTERIA

## SECTION I — PROPERTY COVERAGES

**BUILDING PROPERTY LOSSES WE DO NOT COVER**

Item 6.c. is deleted and replaced by the following:

  c. smog, rust or other corrosion, or electrolysis;

The following is added:

18. *Fungi,* Wet or Dry Rot, or Bacteria meaning the presence, growth, proliferation or spread of *fungi,* wet or dry rot, or bacteria. This exclusion does not apply to the extent coverage is provided for in the **Additional Coverage 11. *Fungi,* Wet or Dry Rot, or Bacteria under Section I — Property Coverages.**

**ADDITIONAL PROPERTY COVERAGES**

The following is added:

11. ***Fungi,* Wet or Dry Rot, or Bacteria.** We will pay up to $10,000 for:

  a. the direct physical loss to covered property caused by *fungi,* wet or dry rot, or bacteria;

  b. the cost to remove *fungi,* wet or dry rot, or bacteria from covered property;

  c. the cost to tear out and replace any part of the building or other covered property as needed to gain access to the *fungi,* wet or dry rot, or bacteria;

Case 3:10-cv-00996   Document 1-2   Filed 10/22/10   Page 40 of 46 PageID #: 49

d. the cost of any testing of air or property to confirm the absence, presence or level of *fungi*, wet or dry rot, or bacteria, whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe there is the presence of *fungi*, wet or dry rot, or bacteria; and

e. **Additional Living Expenses** or **Fair Rental Value** loss covered under **Coverage D — Loss of Use.**

This coverage only applies when such loss or costs:

f. are a result of a loss we cover that occurs during the policy period;

g. are not excluded under **Building Property Losses We Do Not Cover;** and

h. only if all reasonable means are used to save and preserve the property from further damage.

This coverage does not apply to loss to trees, shrubs, or other plants.

The $10,000 limit of liability is the most we will pay for the total of all loss or costs for Coverages A, B, C and D, and does not increase the limit of liability for these coverages, regardless of the number of locations or number of claims made.

---

## DEFINITIONS

The following is added:

16. *"Fungi"* means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or byproducts produced, released by or arising out of *fungi*, including growth, proliferation or spread of *fungi* or the current or past presence of *fungi*. However, this definition does not include any *fungi* intended by the *insured* for consumption.

---

# SPECIAL PROVISIONS — COLLAPSE

---

## SECTION I — PROPERTY COVERAGES

### BUILDING PROPERTY LOSSES WE DO NOT COVER

The following is added:

19. **Collapse**, except as provided in item **12. Collapse** under **Section I — Property Coverages, Additional Coverages.** However, we do insure for any resulting loss unless the resulting loss is itself a loss not insured under this section.

---

### PERSONAL PROPERTY LOSSES WE COVER

Item **12. Collapse** is deleted.

---

### ADDITIONAL PROPERTY COVERAGES

The following is added:

12. **Collapse.**

a. We insure for direct physical loss to covered property involving collapse of the dwelling or any part of the dwelling if the collapse was caused by one or more of the following:

(1) The perils named under **Personal Property Losses We Cover,** with exception of item **12. Collapse** which is previously deleted in this endorsement;

(2) Decay that is hidden from view, unless the presence of such decay is known to an *insured* prior to collapse;

   (3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an *insured* prior to collapse;

   (4) Weight of contents, equipment, animals or people;

   (5) Weight of rain which collects on a roof; or

   (6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

b. Loss to an awning, fence, patio, deck, pavement, swimming pool, hot tub or spa, including their filtration and circulation systems, landscape sprinkler system, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under a.(2) through (6) above, unless the loss is a direct result of the collapse of the dwelling or any part of the dwelling to which it is attached.

c. With respect to this coverage:

   (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

   (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

   (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

   (4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

This coverage does not increase the limit of liability that applies to the damaged covered property.

---

# SPECIAL PROVISIONS — TENNESSEE

## SECTION I — PROPERTY COVERAGES

### BUILDING PROPERTY LOSSES WE DO NOT COVER

Item 5. is deleted and replaced by the following:

5. continuous or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor which occurs over a period of weeks, months or years.

The paragraph following item 6. is deleted and replaced by the following:

However, we do insure for any resulting loss from items 1. through 6. unless the resulting loss is itself excluded under **Building Property Losses We Do Not Cover** in this Section. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the dwelling necessary to repair the system or appliance. We do not cover loss to the system or appliance from which water or steam escaped.

Item **14. Intentional Loss,** the following is added:

   This exclusion does not apply to an *insured* not participating in the intentional loss.

# SECTION I — PROPERTY CONDITIONS

Item 5.a.(4) is deleted and replaced by the following:

    (4)   If the cost to repair or replace is $1,000 or more, we will pay the difference between **actual cash value** and **replacement cost** only after the damaged or destroyed property has actually been repaired or replaced.

Item 8. **Suit Against Us**, is deleted and replaced by the following:

8.    **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the inception of the loss or damage.

The following paragraph is added to **12. Mortgage Clause:**

The rights and obligations set forth above apply to any party who has an insurable interest in the **residence premises** who is not an **Insured.**

# SECTION II — LIABILITY COVERAGES

## LIABILITY LOSSES WE DO NOT COVER

Item **1.a.** is deleted and replaced by:

  a.   which:

    (1)   is expected or intended by any **insured** or which is the foreseeable result of an act or omission intended by any **Insured;** or

    (2)   results from violation of:

        (a)   criminal law; or

        (b)   local or municipal ordinance

        committed by, or with the knowledge or consent of any **insured.**

This exclusion applies even if:

    (3)   such **insured** lacks the mental capacity to form intent;

    (4)   such **bodily injury** or **property damage** is of a different kind or degree than expected or intended; or

    (5)   such **bodily injury** or **property damage** is sustained by a different person, or persons, than expected or intended.

This exclusion applies whether or not any **insured** is charged or convicted of a violation of criminal law, or local or municipal ordinance.

Item **2.a.** is deleted and replaced by the following:

  a.   Liability:

    (1)   for any loss assessment charged against you as a member of an association of property owners;

    (2)   under any contract or agreement. However, this item **2.a.(2)** does not apply to written contracts:

        (a)   that directly relate to the ownership, maintenance or use of an **insured location;** or

        (b)   where the liability of others is assumed by the **insured** prior to an **occurrence;**

        Unless excluded in **2.a.(1)** above or elsewhere in this policy;

Case 3:10-cv-00996   Document 1-2   Filed 10/22/10   Page 43 of 46 PageID #: 52

## DEFINITIONS

Item 2.b.(2) is deleted and replaced by the following:

(2)   coverage does not include:

    (a)   liability assumed by any *insured* under any contract or agreement except any indemnity obligation assumed by the *insured* under a written contract directly relating to the ownership, maintenance or use of the *insured location;*

    (b)   injury resulting from violation of:

        i.    criminal law; or

        ii.   local or municipal ordinance

    committed by, or with the knowledge or consent of any *insured.*

    (c)   injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by any *insured;*

    (d)   injury arising out of the *business* pursuits of any *insured.* This exclusion does not apply to *bodily injury* to a *residence employee* arising out of and in the course of the *residence employee's* employment by any *insured;* or

    (e)   injury arising out of civic or public activities performed for pay by any *insured.*

11. *"Punitive damages"* is deleted.

All other provisions of this policy apply.

This policy is signed on our behalf by our President and Secretary.

*Paula Rosput Reynolds*

Paula Rosput Reynolds
President and CEO

*Stephanie Daley-Watson*

Stephanie Daley-Watson
Secretary

This policy includes copyrighted material of Insurance
Services Office, Inc. with its permission.

CHO-1227/EP 11/89
G17

# IMPORTANT NOTICE

Dear Tennessee Policyholder:

Your Safeco agent is a professional Independent Insurance Agent. If you have specific questions about your policy, YOU MAY DIRECT THEM TO THE AGENT at the address or phone number shown on the Declarations, Statement of Coverage or Extension Certificate.

**Safeco Insurance Company of America**
**Safeco Insurance Company of Illinois**
**Safeco National Insurance Company**
**General Insurance Company of America**
**First National Insurance Company of America**

**Regional Office**
**P.O. Box 100027**
**Duluth, GA 30096-9427**

**Safeco Contact Center**
**1-800-332-3226**

P-1043/TNEP 10/04